UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALEAH MOHAMMED, | ) | 3:23-CV-757 (SVN) |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WARDEN STOVER, FCI DANBURY, | ) | |
| *Respondent*. | ) | April 23, 2024 |

## ORDER ON RECONSIDERATION

Sarala V. Nagala, United States District Judge.

Petitioner Aleah Mohammed has moved for reconsideration of the Court's decision denying a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and seeks to have Respondent credit her under the First Step Act ("FSA") with three courses she took between the date of her sentencing and the date of her arrival at her designated Bureau of Prisons ("BOP") facility. Respondent Stover opposes on the grounds that he cannot, by statute, credit programming completed by Petitioner before her arrival at her designated BOP facility and the subsequent risk and needs assessment she underwent there.

For the reasons described below, the Court disagrees with Respondent, but cannot grant Petitioner the relief she seeks. The Court orders additional briefing to address whether it should grant deference to BOP's interpretation of the FSA time credits procedure.

### I.   PROCEDURAL BACKGROUND

The Court assumes the parties' familiarity with its initial order denying Petitioner's petition for a writ for habeas corpus. ECF No. 12. Accordingly, the Court discusses only the additional procedural background necessary for this ruling.

On November 20, 2023, Petitioner filed a motion for reconsideration of the Court's order denying her habeas relief. ECF No. 16. Relevant here, Petitioner sought reconsideration of the

Court's ruling that she was ineligible to receive FSA time credits for programming she completed between the date her sentence commenced (April 13, 2022), and her October 4, 2022, arrival at Federal Medical Center Carswell ("FMC Carswell"). During this time period, although Petitioner was in custody of the U.S. Marshals Service, she was physically housed in BOP-operated facilities. Stokes Decl., ECF No. 8-3 ¶ 17.[1] On her motion for reconsideration, Petitioner argued that the BOP's regulations providing that an inmate cannot earn FSA time credits until they have arrived at their official BOP detention facility conflict with the FSA and therefore are not due deference under *Chevron USA, Inc. v. Nat'l Res. Def. Council, Inc.* 407 U.S. 837 (1984). Respondent opposed the motion, arguing that Petitioner was ineligible *by statute* from receiving credit for programming that was not assigned to her by BOP as part of her FSA risk and needs assessment, which occurred on October 4, 2022. ECF No. 20 at 4–7; ECF No. 8-3 ¶ 19. On January 3, 2024, the Court granted in part the motion for reconsideration, appointed Petitioner counsel, and ordered counsel to file supplemental briefing "regarding whether the [BOP's] regulations concerning when an inmate can begin to earn credits under the First Step Act are owed deference under *Chevron*." ECF No. 22.

During a status conference with counsel and Petitioner, the Court ordered additional briefing. ECF No. 24. Respondent was directed to file a notice explaining his position why the programming Petitioner participated in prior to her arrival at FMC Carswell would not qualify for credit under the FSA or BOP regulations. ECF Nos. 24, 26. Petitioner then filed her response, arguing that the BOP regulations precluding inmates from receiving credit for programming completed after the commencement of his or her sentence violate clear Congressional intent, and

---

[1] Petitioner was housed in the Metropolitan Detention Center in Brooklyn, New York, and the Federal Transfer Center in Oklahoma City, Oklahoma.

asking the Court to award her credit for the three programs she completed between her sentencing date and the date of her arrival at FMC Carswell. ECF No. 27.

## II. LEGAL STANDARD

A federal prisoner may petition for habeas relief if she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of [her] sentence, but challenges instead its execution subsequent to [her] conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). Thus, § 2241 petitions are appropriately used to challenge FSA time credit calculations. *See Dailey v. Pullen*, No. 3:22-cv-1121 (SRU), 2023 WL 3456696, at *2 (D. Conn. May 15, 2023) (considering a challenge to First Step Act time credit calculation on a § 2241 petition).

## III. DISCUSSION

Petitioner originally sought reconsideration of the Court's ruling that, under BOP regulations, she was unable to receive FSA time credits on the date her sentence commenced because she was not housed at her designated BOP facility. ECF No. 16 at 1–2. Part of her argument in seeking reconsideration was that BOP's regulations contradicted clear congressional intent that an inmate begins accruing FSA time credits on the date his or her sentence commences. In opposing Petitioner's motion, Respondent explained that he agrees with Petitioner that she was eligible to beginning earning credits on April 13, 2022—the date her sentence commenced. ECF No. 20 at 2.[2] Respondent's position is that when Petitioner's sentence commenced, other FSA statutory provisions precluded Petitioner from accruing credits. *Id.* Thus, the parties do not dispute

---

[2] This Court agrees with the reasoning of *HuiHui v. Derr*, No. CV 22-00541 JAO-RT, 2023 WL 4086073 (D. Haw. June 20, 2023), and *Yufenyuy v. Warden, FCI Berlin*, 659 F. Supp. 3d 213 (D.N.H. 2023), which found that BOP's regulations precluding inmates from being eligible to earn FSA credits beginning on the date their sentences commenced contradicts clear congressional intent and are therefore due no deference.

3

the starting premise that a federal inmate's sentence must commence before he or she is eligible to receive FSA credits and that Petitioner meets this eligibility requirement.

Rather, the central dispute is whether the statutes enacting the FSA time credits procedure unambiguously precluded Petitioner from earning FSA credits prior to BOP's conducting her risk and needs assessment upon her intake at FMC Carswell, and its subsequent assignment of evidence-based recidivism reduction programs ("EBRRs") and productive activities ("PAs") for her to complete.  The parties also dispute whether the programs Petitioner completed after her sentencing but before her intake at FMC Carswell—a twelve-hour class on "soft skills," a twelve-hour class on ethics, and a three-hour class on diabetes—qualify as an EBRR or PA under the FSA.

Both remaining disputes are governed under the two-step framework set forth in *Chevron*. Under this framework, the Court first asks "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842.  If Congress's intent is clear, the Court "must give effect to the unambiguously expressed intent of Congress." *Id.* at 843.  If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.*

For the reasons that follow, the Court finds that the FSA statutory scheme does not unambiguously preclude the BOP from crediting Petitioner's programming completed between April 13, 2022, and October 3, 2022, while she was housed at BOP-operated facilities but in the custody of the U.S. Marshals Service.  However, the Court also finds that, on the record and arguments before it, it cannot conclude whether the Court should give deference to BOP's interpretation of the FSA time credit procedures.  Accordingly, the Court will order additional briefing as to the issues identified below.

A. <u>Risk and Needs Assessment System:  Statutory Scheme</u>

The Court finds that the FSA statutory scheme—specifically 18 U.S.C. §§ 3632(d) & 3624(g)—do not unambiguously impose a requirement that an inmate is precluded from receiving FSA time credits for programming undertaken before the BOP has conducted the inmate's initial risk and needs assessment at her designated facility and assigned her programming.  As described below, it must therefore move to *Chevron*'s step two, and requires additional briefing from the parties on this issue.

First, the Court finds that § 3632(d)(4)(C)—by referencing the definition of "eligible inmate" under § 3624(g)—does not unambiguously require BOP to assign an inmate particular programming through the risk and needs assessment system for that programming to count towards an inmate's FSA time credits.  As an initial matter, this subsection directs "[t]he Director of the Bureau of Prisons [to] transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release."  Thus, the subsection would not apply to Petitioner, who no longer seeks immediate release.  *See* ECF No. 27 at 8 (requesting only recalculation of her time credits and remaining sentence).

Section 3624(g), which sets forth criteria to be considered an "eligible prisoner," confirms this reading.  An "eligible prisoner" is one who has earned FSA time credits "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment," has shown through periodic risk assessments "a demonstrated recidivism risk reduction" or maintained minimum or low recidivism risk throughout her term of imprisonment, has had the remainder of the term of imprisonment calculated, and has met other risk recidivism requirements specific to either prerelease custody or supervised release.  18 U.S.C. § 3624(g)(1)(A).  Section 3624(g) does not,

however, provide guidance as to Petitioner's eligibility to earn and accumulate FSA time credits short of release.

Section 3624(g) likewise does not manifest clear Congressional intent that inmates only be given credit for programs completed after their risk and needs assessment and as assigned by BOP. Section 3632(g)(1) explains under what circumstances credits earned under the risk and needs assessment system may be applied towards earlier release. It does not unambiguously state that a risk and needs assessment must be performed before successfully-completed EBRRs and PAs may count. In other words, § 3624(g)(1) does not explain *how* an inmate may earn FSA time credits. Rather, § 3624(g)(1) explains under what circumstances an inmate may apply accrued credits to secure early release. Thus, Respondent is correct that, under § 3632(g)(1), FSA time credits will count towards an inmate's early release only if they are earned as part of the risk and needs assessment system Congress required the Attorney General to develop to effectuate the FSA. *See id.* (referencing risk and needs assessment system from section 3632(a)). However, reading the statute to also preclude BOP from crediting programs undertaken between an inmate's sentencing and arrival at her designated facility, if such programs would otherwise qualify under the risk and needs assessment system, is a strained reading.

Neither does § 3632(d) demand that BOP only credit programs a prisoner has completed as assigned by the BOP. Under § 3632(d)(4)(A), a prisoner earns time credits when they "successfully complete[] evidence-based recidivism reduction programming or productive activities . . . ." A prisoner earns "10 days of time credits for every 30 days of successful participation" in programming, regardless of their risk level, and "an additional 5 days of time credits for every 30 days" if the prisoner is "at a minimum or low risk for recidivating" or if her risk level does not increase over two consecutive assessments. *Id.* § 3632 (d)(4)(A)(i)–(ii). Thus,

the provisions concerning the accumulation of time credits do not provide that an inmate must first undergo an initial risk and needs assessment to begin earning credit, or specify that credit may be awarded only for those programs recommended by BOP.  While an inmate who has not undergone a risk assessment would be unable to earn the additional 5 days of credit for maintaining a low or minimum risk level, *id.* § 3632(d)(4)(A)(ii), a prisoner is not limited by risk level from earning the baseline 10 days of time credits for every 30 days of successful participation in an EBRR or PA, *id.* § 3632(d)(4)(A)(i).  The statute is silent on the issue of whether programs undertaken before the risk and needs assessment is performed can be credited.

Closer to the point, but not addressed in depth by Respondent, is 18 U.S.C. § 3632(a). Under this sub-section, Congress directed the Attorney General to develop a risk and needs assessment system to determine the risk of each prisoner during the intake process, *id.* § 3632(a)(1), to determine the "type and amount of [EBRR] programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs," *id.* § 3632(a)(3), to "reassign the prisoner to appropriate [EBRR] programs or productive activities" based on any revised determination of the prisoner's risks and needs, *id.* § 3632(a)(5), and to provide rewards for successful participation, *id.* § 3632(a)(6).  Accordingly, this subsection makes clear that, under the risk and needs assessment system, BOP is required to assign and re-assign prisoners to appropriate programming and provide rewards and incentives for successful participation.  That BOP is tasked with assigning programming to an inmate, however, does not mean that inmates *must* undergo the assessment before they can earn credit or that they may only participate in assigned programming to receive credit.  The statute nowhere indicates that prisoners may not participate in unassigned programming that otherwise addresses recidivism or a prisoner's identified needs; nor does this

subsection state that BOP must only credit the programming it has assigned to a particular inmate. As the Court has already discussed in reference to § 3632(d), the FSA does not unambiguously state that the BOP must credit only *assigned* EBRRs and PAs.

Further, the statutes clarify that the risk and needs assessment system merely "provide[s] guidance" as to assigning appropriate programming, 18 U.S.C. § 3632(b), which again does not mandate that prisoners only participate in assigned programming. Respondent recognizes as much, explaining that the BOP allows inmates "to earn time credits for participating in programs outside of their assigned [EBRRs]," ECF No. 20 at 6 n.3, and to begin earning FSA credits after arrival at their designated BOP facility but before their initial risk and needs assessment and assignment of appropriate programming, *id.* at 7 n.4 ("Since inmates have their risk and needs assessments . . . within 28-days of arrival at their designated facility, BOP allows them to start earning FSA time credits instantly for consistency purposes.") (internal citation omitted). BOP creates these carve-outs, in part, "in the hopes of promoting rehabilitation and program participation . . . .," *id.* at 6 n.3, which is consistent with Congressional intent in passing the FSA, *see United States v. Simons*, 375 F. Supp. 3d 379, 385 (E.D.N.Y. 2019) ("The Act modified prior sentencing law and expanded vocational training, early-release programs, and other programing designed to reduce recidivism."). Accordingly, BOP has already explained that it is capable of providing—and indeed, does provide—FSA time credits for an inmate's participation in non-assigned programming; and BOP concedes it provides time credits to an inmate even before the inmate has gone through his or her risk and needs assessment.

Thus, the Court finds that the statutory scheme setting up the risk and needs assessment system does not require that the BOP first assess an inmate and assign programming before crediting an inmate's successfully-completed programs. Only BOP regulations impose this

requirement. For instance, 28 C.F.R. § 523.41(c)(2) provides that "successful participation" in EBRR programs and PAs "requires a determination by [BOP] staff that an eligible inmate has participated in the EBRR Programs or PAs *that the [BOP] has recommended based on the inmate's individualized risk and needs assessment*." *Id.* (emphasis added). Similarly, 28 C.F.R. § 523.42(b)(3) states that an eligible inmate may earn FSA time credits if she "is successfully participating in EBRR programs or PAs *that the [BOP] has recommended based on the inmate's individualized risk and needs assessment*" on or after January 15, 2020. *Id.* (emphasis added). Thus, contrary to Respondent's arguments, its position that Petitioner cannot be credited with FSA time credits for the programming between her sentencing and her arrival at FMC Carswell is grounded in BOP's regulations, rather than the FSA statutory scheme itself.

As the relevant statutes are, at best, ambiguous, on the precise question at issue, the Court must move to *Chevron*'s step two to determine if BOP's regulations are "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. As this particular issue has not been briefed by the parties, the Court requires additional briefing described below on this legal issue before determining whether it should give BOP's interpretation deference.

        B.      <u>Risk and Needs Assessment System:  Implementation, EBRRs, and PAs</u>

For the reasons that follow, the Court finds that while BOP's implementation of the FSA's time credits procedures may open the window to granting Petitioner her requested habeas relief, additional briefing about whether the programming in which Petitioner participated qualifies as EBRR programming or PAs is also necessary before the Court can make such a determination.

        *1. Risk and Needs Assessment System Implementation*

Understanding how BOP implements the risk and needs assessment system—and thereby assigns EBRRs and PAs and grants time credits—is necessary background to understanding the

9

precise issues the Court directs the parties to brief.

In developing the risk and needs assessment system, Congress directed the Attorney General to develop a risk and needs assessment tool. The risk and needs assessment tool is "an objective and statistically validated method" through which BOP determines: (A) "as part of the intake process, the risk that a prisoner will recidivate upon release from prison"; (B) "the recidivism reduction programs that will best minimize the risk that the prisoner will recidivate upon release from prison"; and (C) conducts "the periodic reassessment of risk that a prisoner will recidivate upon release from prison . . . ." 18 U.S.C. § 3635(6)(A)–(C).

An inmate's initial risk and needs assessment is ordinarily completed within 28 days of his or her arrival at their designated facility. *See* BOP Program Statement 5410.01 CN-2, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4), § 5; *see also* ECF No. 30 n.2 (citing BOP Program Statement 5410.01 CN-2).[3] The assessment is made up of two components: the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"), which identifies an inmate's risk of recidivism on release, and the Needs Assessment, which assesses an inmate's criminogenic needs. BOP Program Statement 5400.01, First Step Act Needs Assessment, § 2; *see also* ECF No. 8-3 ¶¶ 8, 13 (describing PATTERN and SPARC-13, BOP's needs assessment tool).[4] BOP administers an inmate's risk and needs assessment only after an inmate is transferred to their designated facility. *Id.* An inmate's risks and needs are typically reassessed during regularly scheduled reviews. *See id.* Reviews occur approximately every 180 days, unless an inmate is within one year of release, in which case they occur every 90 days. 28 C.F.R. § 524.11(a).

---

[3] Available at: https://www.bop.gov/policy/progstat/5410.01_cn2.pdf, (last accessed April 23, 2024).
[4] Available at: https://www.bop.gov/policy/progstat/5400.01.pdf, (last accessed April 23, 2024).

The PATTERN tool is first used at an inmate's intake, during which the BOP assigns an inmate their initial recidivism risk level. BOP Program Statement 5410.01 CN-2, § 5. An inmate's risk assessment is relevant to the types of programming the BOP offers an inmate and the amount of FSA time credits an inmate may earn for participating in programming. *See, e.g.*, 28 C.F.R. § 523.42(c). The tool is a worksheet with separate questionnaires for men and women. *See* Female PATTERN Risk Scoring Worksheet;[5] Male PATTERN Risk Scoring Worksheet.[6] Using the worksheet, staff assign numerical values for an inmate's risk of general recidivism or violent recidivism. *See id.*; *see also* Violent Offense Codes for PATTERN Risk Assessment.[7] Scores are assigned based on an inmate's age, criminal history, history of escapes, history of violence, education level, need for drug rehabilitation, prison incidents, and programs completed in prison. In this way, PATTERN is a dynamic system, and an inmate's score can decrease over time as the inmate completes more programs, attains greater education, and maintains a low number of prison incidents. Based on an inmate's total score, she is assigned a risk level of high, medium, low, or minimum—the higher the score, the more likely an inmate is to recidivate. *See* FSA Cut Points.[8] Petitioner was assigned a low risk for recidivism as part of her intake at FMC Carswell on October 4, 2022. ECF No. 8-3 ¶ 19.

BOP also assigns FSA programming to inmates based on their identified needs areas. BOP's needs assessment tool is the Standardized Prisoner Assessment for Reduction in Criminality ("SPARC-13"), which is used to assess an inmate in thirteen needs areas. BOP Program Statement 5410.01 CN-2, § 5. The thirteen needs areas are: anger/hostility, antisocial

---

[5] Available at: https://www.bop.gov/inmates/fsa/docs/female_pattern_form.pdf?v=1.3, (last accessed April 23, 2024).
[6] Available at: https://www.bop.gov/inmates/fsa/docs/male_pattern_form.pdf?v=1.3, (last accessed April 23, 2024).
[7] Available at: https://www.bop.gov/inmates/fsa/docs/fsa_pattern_violent_offense_codes.pdf, (last accessed April 23, 2024).
[8] Available at: https://www.bop.gov/inmates/fsa/docs/fsa_cut_points.pdf?v=1.3, (last accessed April 23, 2024).

peers, cognitions, dyslexia, education, family/parenting, finance/poverty, medical, mental health, recreation/leisure/fitness, substance abuse, trauma, and work. BOP Program Statement 5400.01, § 4. Different departments are responsible for assessing specific needs. *Id.* Psychology services conducts a questionnaire and interview to assess an inmate's anger/hostility, antisocial peers, cognitions, and family/parenting. *Id.* Unit management assesses substance abuse and finance/poverty needs by reviewing an inmate's PSR and other relevant financial information. *Id.* Education staff assess education, work, and dyslexia needs through document reviews and screenings. *Id.* Health services assesses medical and recreation/leisure/fitness needs by completing a physical and reviewing an inmate's medical history. *Id.* Finally, correctional services, while not responsible for assessing any specific need area, assists as necessary. *Id.* BOP allows inmates to begin immediately earning time credits upon their arrival at their designated BOP facility, even if the assessment has not yet been completed. ECF No. 30 at 3 n.2.

Unit management then informs the inmate of his or her target needs, and staff recommend specific EBRRs and structured curriculum-based PAs to address those target needs. *Id.* §§ 4–5. If an inmate agrees to participate in the recommended programming, then the inmate is either placed into a program with open availability or on a waitlist to join a program. *Id.* In either scenario, the inmate begins immediately earning credits under the risk and needs assessment system by virtue of their "opt-in" status, even if they are not actively participating in any assigned EBRR or PA. *See* BOP First Step Act Approved Programs Guide at 3;[9] *see also* ECF No. 20 at 6, n.3; ECF No. 30 at 3 n.2 ("Due to this requirement that these assessments occur within 28 days of arrival, the BOP allows inmates to start earning FSA time credits instantly upon arrival."). If the inmate declines to participate in a recommended program, however, then that inmate cannot receive FSA

---

[9] Available at: https://www.bop.gov/inmates/fsa/docs/fsa-approved-program-guides-en.pdf?v=1.0.0, (last accessed April 23, 2024).

time credits. BOP Program Statement 5410.01 CN-2, § 5. Finally, an inmate's target needs are re-assessed at 180-day intervals, as part of the routine program review, and BOP staff may recommend additional EBRRs, structured curriculum-based PAs, or unstructured PAs. *Id.* § 6.

On the record before the Court, there is no information concerning which of the SPARC-13 needs areas BOP targeted as part of Petitioner's initial intake and subsequent reviews. Nor does the Court have information as to which EBRRs and PAs BOP assigned Petitioner and whether she participated in those programs immediately or if she started earning credits while on a waitlist to participate in recommended programming. The only information before the Court is that, as of April 17, 2024, Petitioner had earned 225 days of time credits under the FSA. ECF No. 33 at 2.

With this background in mind, the Court turns to whether any of Petitioner's pre-FMC Carswell programs should qualify as an EBRR or PA for calculating her accrual of time credits.

*2. EBRRs*

The Court finds that, on the record before it, the Court cannot determine whether Petitioner's soft skills, ethics, and diabetes programs qualify as EBRRs.

An evidence-based recidivism reduction program "means either a group or individual activity that has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism [and] is designed to help prisoners succeed in their communities upon release from prison . . . ." 18 U.S.C. § 3635(3) (cleaned up). BOP-approved EBRRs include, but are not limited to, anger management, cognitive behavioral therapies, and other life and occupational skill courses. *See* BOP First Step Act Approved Programs Guide; *see also* ECF No. 26 at 4 (citing BOP FSA Approved Programs Guide). As Respondent points out, the programs completed by Petitioner during the relevant period are not approved EBRRs. Further, Petitioner has provided no evidence that the soft skills, ethics, and

diabetes programming she took should be considered EBRRs because empirical evidence has demonstrated that the programs reduce recidivism or are likely to be effective in doing so.

The Court notes, however, that the BOP already allows inmates to receive FSA time credits when the inmate is otherwise eligible to receive credits but cannot take an EBRR for logistical reasons, and it seems as though programs on soft skills or ethics might otherwise meet the definition of an EBRR as contemplated by Congress. *See* 18 U.S.C. § 3635(3)(C)(i), (iii) (noting that EBRRs may include programs on "social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills;" and "classes on morals or ethics"). That said, the Court has insufficient information from which it could make a determination about whether the programs Petitioner took would qualify as EBRRs, and therefore requests additional briefing on this matter, as described further below.

### 3. PAs

The Court also finds that, on the record before it, it cannot determine whether any of Petitioner's pre-BOP programming should qualify as a PA.

A productive activity, is "a group or individual activity that is designed to allow prisoners determined as having a minimum or low risk of recidivating to remain productive and thereby maintain a minimum or low risk of recidivating . . . ." 18 U.S.C. § 3635(5). Unlike EBRRs, which require empirical evidence of effectiveness, PAs are activities designed to maintain an inmate's low or minimum risk level. While the statutes explain that PAs are programs *designed* to help maintain an inmate's low or minimum risk assessment, the statutes do not state that only inmates of a particular risk level may successfully complete PAs. In other words, BOP at least theoretically could assign a PA to a medium- or high-risk inmate because BOP has determined that the PA would benefit that particular inmate, even if the PA was originally *designed* for minimum- or low-

risk inmates. As with most of the FSA statutory provisions, the subsection defining PAs explains what a PA is, but not how an inmate may successfully complete a PA program for purposes of earning FSA time credits.

BOP's broad definition of PAs supports this reading. "PAs include a variety of structured programs" that are approved by BOP, "and unstructured activities (e.g., teams, exercise, worship services.)." BOP First Step Act Approved Programs Guide at 2. Structured PAs are curriculum-based and delivered by "qualified" individuals. *Id.* at 56. Unstructured Pas, on the other hand, include "[p]roductive, free-time activities (e.g., recreation, hobby crafts, or religious services), [f]amily interaction activities (e.g., social visiting), [and] [p]ersonal growth and development classes (e.g., adult continuing education classes) . . . ." BOP Program Statement 5410.01 CN-2, § 3. Thus, BOP has created broad categories of PAs through the structured and unstructured system, and Petitioner's participation in classes on soft skills, ethics, and diabetes seem to fall within the BOP's broad implementation. Indeed, BOP's FSA Approved Program Guidelines, which Respondent linked in ECF No. 26, identifies a course on "Women in the 21st Century Workplace" that addresses "soft skills of women" and a course on "Managing Your Diabetes" as approved PAs. Thus, it appears that the subject matter of Petitioner's pre-FMC Carswell programming may qualify.

On the record before the Court, however, it cannot determine whether it should give BOP deference as to its interpretation of PAs and whether Petitioner's programming would qualify under BOP's definition. Thus, the Court orders additional briefing on these issues.

## IV. CONCLUSION

For the reasons described herein, the Court orders additional briefing from the parties. The parties shall address the following issues:

1. Whether, under *Chevron*, the Court should grant deference to BOP's regulations providing that an inmate may only receive FSA time credits for EBRR Programs or PAs that the BOP has recommended after the inmate undergoes her individualized risk and needs assessment upon arrival at her BOP-designated facility;

2. Relevant to whether the Court should consider Petitioner's completed programming as successfully-completed EBRRs, (a) whether the programs completed by Petitioner have evidence supporting their effectiveness in reducing recidivism; and (b) whether the Court can or should nevertheless credit Petitioner's programming by backdating her risk and needs assessment and treating her as if she were on the risk and needs assessment waiting list at the time of the programs;

3. Relevant to whether the Court should consider Petitioner's completed programming as successfully-completed PAs, (a) whether such programming would qualify as a PA by statute or by BOP implementation, had Petitioner participated in it after her risk and needs assessment was completed; and (b) whether the Court can or should nevertheless credit Petitioner's programming by backdating her risk and needs assessment by treating her as if she were on the risk and needs assessment waiting list at the time of the programs.

As some of the information required to complete the additional briefing is likely in the control of Respondent, Respondent shall file his briefing first, by **May 7, 2024,** and Petitioner shall respond by **May 28, 2024**.

**SO ORDERED** at Hartford, Connecticut, this 23rd day of April, 2024.

                             _/s/ Sarala V. Nagala_
                             SARALA V. NAGALA
                             UNITED STATES DISTRICT JUDGE